Filed 5/21/21  P. v. Hernandez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CESAR STEVE HERNANDEZ,<br><br>    Defendant and Appellant. | B305559<br><br>(Los Angeles County<br>Super. Ct. No. BA472115) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard S. Kemalyan, Judge.  Affirmed.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Cesar Steve Hernandez of petty theft and assault with a deadly weapon.  Hernandez contends his assault conviction must be reversed because the trial court erred when it instructed the jury on a legally inapplicable theory of guilt that the glass bottle Hernandez used during the assault was an inherently deadly weapon.  We agree that the trial court erred, however, the error was harmless.  Therefore, we affirm the judgment.

## BACKGROUND

I.     The assault with a deadly weapon

In the early morning of October 5, 2018, Hernandez walked into a convenient store, took a sandwich from the store shelf, and tried to microwave it.  The store clerk told Hernandez that he needed to pay for the sandwich before using the microwave.  Hernandez appeared angry and put the sandwich back, but remained in the store.  The clerk told Hernandez that he needed to leave if he was not going to purchase anything.  Hernandez left.

Shortly thereafter, Hernandez returned to the store, took a bag of chips, and exited without paying for them.  The clerk picked up a metal rod and followed Hernandez outside.  When the clerk tried to scare Hernandez by swinging the rod at him, Hernandez pulled out a glass bottle from his backpack and the clerk retreated back into the store, closing the glass double doors.  Hernandez forced open one of the doors and threw the bottle at the clerk who was a few feet away.  The bottle flew over the clerk's shoulder and shattered when it hit the ground.[1]

---

[1] The clerk told police that the bottle missed him by several inches, however, at trial, he testified that the bottle struck him

After Hernandez threw the bottle at the clerk, he struck the glass double doors with two unidentified objects, shattering one door and cracking the other. The incident was recorded on the store's surveillance cameras.

II. Procedure

An information charged Hernandez with second degree robbery (Pen. Code,[2] § 211; count 1), assault with a deadly weapon (§ 245, subd. (a)(1); count 2), and misdemeanor vandalism (§ 594, subd. (a); count 3). As to count 1, the information alleged Hernandez personally used a deadly and dangerous weapon, a glass bottle, within the meaning of sections 12022, subdivision (b)(1) and 1192.7, subdivision (c)(23). As to counts 1 and 2, the information alleged Hernandez suffered three serious or violent convictions within the meaning of sections 667, subdivisions (a)(1) and (d); 1170.12, subdivision (b); and 667.5, subdivision (b).

A jury found Hernandez not guilty of robbery as charged in count 1, but guilty of the lesser-included offense of petty theft in violation of section 484, subdivision (a). It also found Hernandez guilty of assault with a deadly weapon and misdemeanor vandalism.

On January 23, 2020, the trial court sentenced Hernandez to 13 years in prison and ordered him to pay various fines, fees, and victim restitution. Hernandez appealed.

---

on the upper left forearm and that he experienced pain and noticed a quarter-sized lump the day after the incident.

[2] All further statutory references are to the Penal Code.

## DISCUSSION

Hernandez's sole claim on appeal is that the assault with a deadly weapon conviction must be reversed because the trial court erroneously instructed the jury on an inapplicable theory of guilt, specifically, that the glass bottle was an inherently deadly weapon. The People concede the error but argue that the error was harmless. We agree with the People.

The jury was instructed with CALCRIM No. 875, which provided in relevant part: "A deadly weapon other than a firearm is any object, instrument or weapon that is inherently deadly or . . . one that is used in such a way that it is capable of causing and likely to cause death or great bodily injury."[3] CALCRIM No. 875 did not define "inherently deadly."[4] Because a glass

---

[3] CALCRIM No. 875 listed the elements of the offense as follows: "1. The defendant did an act with a deadly weapon other than a firearm, a glass bottle, that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; [¶] AND [¶] 4. When the defendant acted he had the present ability to apply force with a deadly weapon."

[4] The jury was instructed with CALCRIM No. 3145 which provided that, in "deciding whether an object is a deadly or dangerous weapon, consider all the surrounding circumstances, including when and where the object was possessed, and where the person who possessed the object was going and any other evidence that indicates whether the object would be used for a dangerous, rather than a harmless, purpose." However, the jury

4

bottle is not inherently deadly as a matter of law, Hernandez contends that the jury could have convicted him based on this legally invalid theory.

A trial court has a duty to instruct " 'on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case.' " (*People v. Townsel* (2016) 63 Cal.4th 25, 58.)  We review challenges to jury instructions de novo.  (*People v. Baratang* (2020) 56 Cal.App.5th 252, 259.)  When a defendant claims instructional error based on a legally inadequate theory of guilt, our Supreme Court requires us to apply the harmless beyond a reasonable doubt standard articulated in *Chapman v. California* (1967) 386 U.S. 18, 24 to claims of instructional error that are based on a legally inadequate theory of guilt.  (*People v. Aledamat* (2019) 8 Cal.5th 1, 7–9 (*Aledamat*).)  Under that standard, we "must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, it determines the error was harmless beyond a reasonable doubt." (*Id.* at p. 13.)

Hernandez's contention is governed by our Supreme Court's decision in *Aledamat*, *supra*, 8 Cal.5th 1.  In that case, the jury found the defendant guilty of assault with a deadly weapon after he thrust a box cutter toward the victim.  (*Id.* at p. 4.)  The trial court instructed the jury with the same version of CALCRIM No. 875 at issue here.  (*Id.* at pp. 3–4.)  *Aledamat* at page 6 found that, while CALCRIM No. 875 accurately stated the law, the evidence did not support the instruction because a box

---

was instructed to consider this definition only if it first found that Hernandez was guilty of robbery.

5

cutter is not an inherently dangerous or deadly weapon as a matter of law. " 'As used in section 245, subdivision (a)(1), a "deadly weapon" is "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." [Citation.] Some few objects, such as dirks and blackjacks, have been held to be deadly weapons as a matter of law; the ordinary use for which they are designed establishes their character as such. [Citation.] Other objects, while not deadly per se, may be used, under certain circumstances, in a manner likely to produce death or great bodily injury. In determining whether an object not inherently deadly or dangerous is used as such, the trier of fact may consider the nature of the object, the manner in which it is used, and all other facts relevant to the issue.' " (*Aledamat*, at p. 6.) Allowing the jury to consider the theory that the box cutter was inherently deadly was legal error. (*Id.* at p. 7.)

Nonetheless, *Aledamat*, *supra*, 8 Cal.5th at page 13 held that the error was harmless "after examining the entire cause, including the evidence, and considering all relevant circumstances." Significantly, the court pointed to a number of relevant circumstances that convinced it that that the error did not impact the verdict. First, *Aledamat* reasoned that while the plain text of CALCRIM No. 875 technically suggested that an object could be a deadly weapon in two distinct ways, inherently or as used, reading all of the instructions in context dispelled this interpretation. The jurors were explicitly instructed on CALCRIM No. 3145 that they had to consider all of the surrounding circumstances in deciding whether an object is a deadly weapon. Thus, *Aledamat* held, it was unlikely that the jury could find the box cutter an inherently deadly weapon

6

without first considering the surrounding circumstances, including how defendant used it. (*Id.* at pp. 13–14.) Second, while the prosecutor stated that the box cutter was inherently deadly, neither he nor defense counsel suggested there were two separate ways the jury could find that box cutter was a deadly weapon. (*Id.* at p. 14.) The court noted that while defense counsel did not expressly concede that the box cutter was a deadly weapon, he did not contest that point either because it would have been futile. (*Ibid.*) Third, *Aledamat* reasoned it would have been impossible for the jury not to find the box cutter was capable of causing and likely to cause death or bodily injury based on other facts the jury necessarily found, i.e., that "(1) defendant did an act with a deadly weapon (either inherently or as used) that by its nature would directly and probably result in the application of force; (2) defendant was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (3) defendant had the present ability to apply force with a deadly weapon to a person." (*Id.* at p. 15.) " 'No reasonable jury that made all of these findings could have failed to find' that defendant used the box cutter in a way that is capable of causing or likely to cause death or great bodily injury." (*Ibid.*)

Here, as in *Aledamat*, the trial court committed legal error when it permitted the jury to consider that the glass bottle was an inherently deadly weapon.[5]  However, like *Aledamat*, after

---

[5] We reject the People's argument that the error was factual rather than legal.  Had the trial court explained the difference between an inherently deadly weapon and an object that is dangerous as used, the error would have been purely

7

reviewing the entire cause, including all of the relevant circumstances, we find the error was harmless beyond a reasonable doubt. First, just as in *Aledamat*, the jurors were informed of CALCRIM No. 3145[6] and expressly instructed to consider all of the surrounding circumstances, including how Hernandez used the bottle, in determining whether the bottle was a deadly weapon. Thus, it is unlikely that the jury did not consider the manner in which the glass bottle was used and simply found that it was inherently dangerous. Undeniably, it is common knowledge that a bottle is used to store liquid and ordinarily appears less dangerous than a box cutter. To be clear, if our high court was confident that the *Aledamat* jury, upon considering the instructions in context, did not find that a box cutter was inherently dangerous, we are equally assured that a similarly instructed jury here did not find that the glass bottle was inherently deadly or dangerous.

Second, neither the prosecutor nor defense counsel suggested there were two separate ways to find that the bottle was a deadly weapon. In fact, during closing argument, the prosecutor made clear that the bottle was not inherently deadly but became deadly as result of Hernandez's conduct. "A bottle by itself is nothing. You recycle it. It's a good container. It contains our drink. It's great. It's got a useful purpose, but depending on

factual. (See *Aledamat*, *supra*, 8 Cal.5th at p. 8.) However, the jury was not provided with this distinction, therefore, the error was legal.

[6] The trial court read this instruction to the jury as an enhancement to count 1, the robbery charge, provided a written copy to the jury and the prosecutor argued this instruction to the jury in closing argument.

how you use it, it could become a deadly weapon especially if you're trying to hit somebody with it. I hope nobody here has been hit with a glass bottle, but if you were, it will not be pleasant. I think we all know that you don't have to be—you don't have to have first-hand experience to understand that. If someone is trying to hit you with a glass bottle, that is assault with a deadly weapon, and you don't have to be hit by that and actually sustain injury, like stitches." The prosecutor employed the surveillance footage to underscore that the manner in which Hernandez used the bottle made it dangerous. "Look at Mr. Hernandez's body. It's not just a toss. It's not bottle tossing. Look at his body, his other arm, both legs, and then pulling his right hand all the way back and then throwing it. It's pretty violent. His intent is very clear. He's aiming. His target is the store clerk who wouldn't let him go with the bag of chips." Despite Hernandez's contention to the contrary, the prosecutor's closing argument did not rely on a theory that the bottle was inherently dangerous. Indeed, the prosecutor took time to clarify that the bottle was dangerous as used and became a deadly weapon only when Hernandez violently threw the bottle at the clerk.

Moreover, just as in *Aledamat*, defense counsel did not contest that Hernandez used the bottle in a way that was dangerous or likely to cause great bodily injury. Indeed, contesting the point would have been futile because the evidence was overwhelming that Hernandez threw the bottle with enough force to seriously injure the clerk. To be sure, the surveillance video showed Hernandez violently throw the bottle, which narrowly missed the clerk, and then shattered on the ground. Rather than dispute this damning evidence, defense counsel

9

chose to rely on a theory that Hernandez was mentally unstable and threw the bottle in response to what Hernandez perceived to be a "a real and serious violent threat" from the clerk.

Third, the jury necessarily found that (1) Hernandez did an act with a deadly weapon (either inherently or as used) that by its nature would directly and probably result in the application of force; (2) Hernandez was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in the application of force to someone; and (3) Hernandez had the present ability to apply force with a deadly weapon to a person. Under the record before us, as in *Aledamat*, no reasonable jury that made all of these findings could have failed to find that defendant used the bottle in a way that is capable of causing or likely to cause great bodily injury. In sum, because the jury was instructed to consider all of the surrounding circumstances, Hernandez never disputed that the bottle was being used as a deadly weapon, the prosecutor clarified that the glass bottle was not an inherently dangerous weapon, and the evidence that Hernandez used the bottle in a manner that was capable of producing and likely to produce great bodily injury (i.e., as a deadly weapon) was overwhelming, we find the instructional error harmless beyond a reasonable doubt. (See *Aledamat*, *supra*, 8 Cal.5th at p. 5.)

10

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.


KALRA, J.*

We concur:


EDMON, P. J.


LAVIN, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.